2020 IL App (1st) 200180-U
No. 1-20-0180

SECOND DIVISION
October 20, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF FIDEL MARQUEZ, JR., | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | No. 14 D 669 |
| v. | ) | |
| | ) | |
| VICTORIA J. MARQUEZ, | ) | The Honorable |
| | ) | Mary S. Trew, |
| Respondent-Appellee. | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:* Where the record did not contain any evidence demonstrating that the petitioner's retirement would affect his ability to meet his maintenance obligations, the trial court did not abuse its discretion in denying the petitioner's petition to terminate maintenance.

¶ 2    Petitioner, Fidel Marquez, Jr., appeals from the trial court's denial of his petition to terminate the spousal maintenance he pays to respondent, Victoria J. Marquez. For the reasons that follow, we affirm.

¶ 3                                                  I. BACKGROUND

¶ 4        The parties were married in 2000, and the judgment dissolving their marriage was entered in 2015. As part of the judgment for dissolution, petitioner was ordered to pay maintenance to respondent in the amount of $13,000 per month, payable in the amount of $6,000 every two weeks via direct deposit. The judgment provided that petitioner's maintenance obligations would terminate pursuant to the statutory factors listed in section 510(a-5) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(a-5) (West 2014)) or upon the payment of 130 bi-weekly payments of $6,000 (*i.e.*, five years), whichever occurred first. The first year of maintenance, however, was non-modifiable.

¶ 5        In September 2019, petitioner filed a petition to terminate his maintenance obligation. In it, petitioner alleged that at the time the judgment of dissolution was entered, he worked in executive management with ComEd. It was, however, contemplated at that time that he may retire. Thus, to protect respondent's interest in maintenance, the first year of maintenance was made non-modifiable. He further alleged that he would be retiring on September 30, 2019, and that he did not plan to seek any further employment. This, he contended, constituted a substantial change in circumstances that justified terminating his maintenance obligation to respondent.

¶ 6        The record does not contain a transcript of the hearing on the petition to terminate. It does, however, contain a bystander's report, which recounts the entirety of the evidence presented at the hearing as follows:

           "[Petitioner] was called as the first witness in his case in chief. He testified that he and [respondent] were divorced on December 16, 2015[,] and that a Judgment for Dissolution of Marriage was entered the same day. [Petitioner] further testified that he was ordered to pay $13,000.00 per month as and for maintenance beginning with his first

paycheck after January 01, 2016. [Petitioner] testified that he was actually paying $6,000.00 every two weeks to [respondent] via direct deposit to her JPMorgan Chase checking account.

Further, [petitioner] testified that at the time of entry of the Judgment on December 16, 2015, he was employed in executive management for ComEd and that it was anticipated between the parties on the date of Judgment that he may retire. [Petitioner] testified that was the reason the first year of maintenance was non-modifiable as to amount as per the Judgment.

[Petitioner] testified that his last day of employment with ComEd was on September 30, 2019. [Petitioner] testified that he was asked to retire by his superior and that the retirement was forced. [Petitioner] testified that he was no longer employed as of the date of the hearing, January 13, 2020. [Petitioner] testified he received his first pension check in October 2019 and was receiving retirement income in the approximate amount of $11,400.00.

[Petitioner's] counsel examined [petitioner] concerning his December 30, 2019, Financial Affidavit. When [petitioner's] counsel attempted to introduce [petitioner's] December 30, 2019, Financial Affidavit into evidence, [respondent's] counsel objected as to its timeliness on the basis of Circuit Court of Cook County Rule 13.3.1(b), that the Financial Affidavit had not been tendered prior to hearing. Counsel for [petitioner] represented to the Court that [petitioner's] Financial Affidavit was tendered to opposing counsel on the morning of the hearing. Counsel for [petitioner] also represented to the Court that [respondent] had not tendered her Financial Affidavit as per local Court Rule. The Court sustained the objection and [petitioner's] Financial Affidavit was not admitted

into evidence. Counsel for [petitioner] then tendered the witness for questioning by [respondent's] counsel, who reserved his right to examine [petitioner] at that time.

Counsel for [petitioner] then called [respondent] as a witness, and as the second witness in [petitioner's] case-in-chief. When [respondent] was asked if she was employed and earning income, her counsel objected on the basis of relevance and said objection was overruled by the Court. [Respondent] testified she was retired and receiving $3,400.00 per month gross from a pension, she was not employed and had retired in September 2018. Counsel for [petitioner] then tendered the witness for questioning. Counsel for [respondent] reserved his right to examine [respondent]. Counsel for [petitioner] then rested."

¶ 7    Respondent made a motion for a directed finding, arguing that petitioner had failed to carry his burden of establishing a *prima facie* case that a substantial change in circumstances had occurred, justifying terminating the maintenance. Respondent argued that petitioner's testimony was unclear and that he presented no testimony or evidence as to how petitioner's retirement would affect his ability to pay maintenance, if at all. Petitioner argued in response that his retirement was a substantial change in circumstances and that he was no longer earning the income of an executive at ComEd. He also argued that the judgment for dissolution contemplated his retirement, which is why the first year of maintenance was made non-modifiable.

¶ 8    The trial court denied petitioner's petition to terminate, finding that petitioner failed to make out a *prima facie* case that there was a substantial change in circumstances justifying terminating petitioner's maintenance obligation.

¶ 9    Petitioner then instituted this timely appeal.

¶ 10                                II. ANALYSIS

¶ 11        On appeal, petitioner argues that the trial court erred in denying his petition to terminate maintenance, because his retirement constituted a substantial change in circumstances, and it was an abuse of discretion not to terminate the maintenance on that basis. He also argues that the trial court did not act equitably when it excluded his financial affidavit from evidence on the basis that petitioner had violated local rules. We affirm.

¶ 12        Pursuant to section 510(a-5) of the Act, a court may modify or terminate an order for maintenance only upon a showing of a substantial change in circumstances. 750 ILCS 5/510(a-5) (West 2018). A substantial change in circumstances "means that either the needs of the spouse receiving maintenance or the ability of the other spouse to pay that maintenance has changed." *In re Marriage of Shen*, 2015 IL App (1st) 130733, ¶ 132. As the party seeking modification, petitioner bears the burden establishing that a change in circumstances has occurred. *Id.*

¶ 13        In making the determination of whether to modify or terminate maintenance, the trial court should consider the following factors:

"(1) any change in the employment status of either party and whether the change has been made in good faith;

(2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage and the present status of the property;

(7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage; and

(9) any other factor that the court expressly finds to be just and equitable."

750 ILCS 5/510(a-5). In addition, the trial court is to consider the same factors that are considered at the time maintenance is initially awarded. *Shen*, 2015 IL App (1st) 130733, ¶ 134. These factors are as follows:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage;

(2) the needs of each party;

(3) the realistic present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

(5) any impairment of the realistic present or future earning capacity of the party against whom maintenance is sought;

(6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment;

(6.1) the effect of any parental responsibility arrangements and its effect on a party's ability to seek or maintain employment;

(7) the standard of living during the marriage;

(8) the duration of the marriage;

(9) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and the needs of each of the parties;

(10) all sources of public and private income including, without limitation, disability and retirement income;

(11) the tax consequences to each party;

(12) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(13) any valid agreement of the parties; and

(14) any other factor that the court expressly finds to be just and equitable."

750 ILCS 5/504(a) (West Supp. 2019).

¶ 14     Whether a party's retirement will constitute a substantial change in circumstances depends on the circumstances and requires the consideration of a number of additional factors: the party's age, health, motives and timing of retirement, ability to pay maintenance after retirement, and the former spouse's ability to provide for herself. *In re Marriage of Waller*, 253 Ill. App. 3d 360, 362 (1993). In addition, where the moving party has sufficient assets to continue to meet his or her maintenance obligations even after retirement, a reduction in income

resulting from retirement does not, without more, constitute a substantial change in circumstances. See *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 19 (where the movant had sufficient assets, namely real estate, retirement accounts, and an expected inheritance, to continue to meet his maintenance obligations after retirement, his decrease in salary did not constitute a substantial change in circumstances); *In re Marriage of Schrimpf*, 293 Ill. App. 3d 246, 252-53 (1997) (the trial court did not abuse its discretion in refusing to terminate or reduce the husband's maintenance obligations based on his retirement where he had sufficient assets in the form of various income streams, life insurance policies, and real estate to pay the maintenance).

¶ 15    We review the trial court's decision on a petition to modify or terminate maintenance for an abuse of discretion. *Shen*, 2015 IL App (1st) 130733, ¶ 135. "Under the abuse of discretion standard, the question is not whether this court might have decided the issue differently, but whether any reasonable person could have taken the position adopted by the trial court." *Id.* (quoting *In re Marriage of Samardzija*, 365 Ill. App. 3d 702, 708 (2006) (internal quotation marks omitted)).

¶ 16    Here, the trial court denied petitioner's petition to terminate maintenance on the basis that petitioner failed to demonstrate a substantial change in circumstances. We conclude that the trial court's decision in this respect was not an abuse of discretions, given the dearth of evidence in the record demonstrating what, if any, effect petitioner's retirement had on his ability to pay maintenance. To begin with, in his petition for termination, petitioner simply alleged that he would be retiring at the end of September 2019 and that he did not plan to seek any further employment. He asserted that this constituted a substantial change of circumstances justifying termination, and he cited section 510(a-5)(1) of the Act (750 ILCS 5/510(a-5)(1) (West 2018)) in

support. Section 510(a-5)(1) provides that a party's good faith change in employment is but one of the factors to be considered when assessing whether maintenance should be modified. 750 ILCS 5/510(a-5)(1). Petitioner did not cite any other authority to support his claim that his retirement alone constituted a substantial change in circumstances justifying termination of his maintenance obligations. More importantly, he did not allege any facts that would, even if taken as true, demonstrate that his retirement would render him unable to meet his maintenance obligations. In fact, in his petition to terminate, petitioner did not allege any facts regarding his financial situation at all—nothing regarding his retirement income, assets, or liabilities. He also did not allege any facts that would relate to any of the other numerous factors to be considered by the trial court in ruling on the petition to terminate.

¶ 17       Petitioner's failure to support his claim of a substantial change in circumstances continued into the hearing on his petition to terminate. There, as recounted in the bystander's report, petitioner simply testified that he had been "forced" to retire and that he was only receiving $11,40.00 per month[1] in retirement income. Although the bystander's report states that petitioner was examined regarding his financial affidavit, the bystander's report does not contain any of the specifics of his testimony in that respect. Accordingly, it appears from the record that petitioner presented no evidence whatsoever regarding his overall financial situation. Although retirement income of $11,400 per month is undoubtedly less than petitioner's $13,000-per-month maintenance obligation, there is absolutely no basis on which to conclude petitioner is unable to make the maintenance payments, because the record does not contain any evidence from petitioner on whether he is receiving income from any other sources, what his debts and other

---

[1] We note that petitioner claims in his brief that he received $11,400.00 per month in retirement income. The bystander's report, however, says only that he "was receiving retirement income in the approximate amount of $11,40000." Whether petitioner received $11,400.00 per month or on some other interval, however, is ultimately immaterial to our decision.

financial obligations are, or what other assets he owns. Moreover, petitioner also failed to present any evidence on any of the other factors to be considered by the trial court in ruling on the petition to terminate.

¶ 18     We note that petitioner testified at the hearing that the parties contemplated his retirement at the time of the judgment for dissolution of marriage was entered and that was the reason the first year of maintenance was made non-modifiable. This fact actually works against petitioner's pursuit of maintenance termination. As the Second District in *Bernay* explained, "It is axiomatic that, to warrant termination, the 'change' must not have been contemplated when permanent maintenance was ordered." *Bernay*, 2017 IL App (2d) 160583, ¶ 18 (concluding that where the movant's retirement was contemplated at the time maintenance was initially awarded, his retirement did not constitute a substantial change in circumstances warranting modification).

¶ 19     Petitioner's final contention is that the trial court acted inequitably in refusing to admit his financial affidavit due to his failure to timely tender it to opposing counsel under local rules. We conclude that petitioner has waived this contention for failure to cite any authority in support of the contention that it is improper for trial courts to exclude financial affidavits under such circumstances and for failing to provide any argument as to what was inequitable about the trial court's refusal to admit the affidavit. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (requiring that the argument section of appeals briefs "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009) ("The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) [citation], resulting in waiver."); *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with

pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

¶ 20    Even putting waiver aside, petitioner makes no contention that he was prejudiced in any way by the exclusion of his financial affidavit, a failure that is fatal to his claim of error. See *Stricklin v. Chapman*, 197 Ill. App. 3d 385, 388 (1990) ("It is also axiomatic that error in the exclusion or admission of evidence does not require reversal unless one party has been prejudiced or the result of the trial has been materially affected."). Although the trial court refused to admit the hard copy of petitioner's financial affidavit into evidence, the record reflects that petitioner was examined by his counsel on the financial affidavit without objection. As mentioned above, the bystander's report does not elaborate on petitioner's testimony in that respect, but there is nothing in the record to suggest that his testimony was limited in any way or that he was not free to testify about the information that made up his financial affidavit, *i.e.*, his income, expenses, assets, and liabilities. Accordingly, even if petitioner had not waived this contention, we would conclude that any error in the exclusion of the financial affidavit did not warrant reversal, because petitioner has failed to establish that he was prejudiced by the exclusion of the affidavit.

¶ 21    In sum, based on the evidence in the record before us, we conclude that the trial court did not abuse its discretion in denying petitioner's petition to terminate maintenance. Petitioner failed to carry his burden of establishing that his retirement constituted a substantial change in circumstances, *i.e.*, that his ability to pay maintenance had changed, and he also failed to present evidence on any of the other factors to be considered by the trial court in assessing whether termination of maintenance was warranted. His contention that the trial court erred in excluding his financial affidavit is both waived and without merit.

¶ 22                                      III. CONCLUSION

¶ 23        For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 24        Affirmed.